In re Maurice G. WOODS and
Teresa J. Woods, Debtors.

Maurice G. WOODS and Teresa
J. Woods, Appellants,

v.

Thomas J. KENAN, Trustee; Andrews
Royalty, Inc.; Gary J. Lamb; and
Jon M. Morgan, Appellees.

BAP No. WO–97–035.
Bankruptcy No. 84–03759–A.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Jan. 20, 1998.

Maurice G. Woods, II, of McAtee & Molinsky, P.C., Oklahoma City, OK, for Appellants.

Thomas J. Kenan (David Pomeroy with him on the brief), of Fuller, Tubb & Pomeroy, Oklahoma City, OK, for Appellee Thomas J. Kenan.

Before PUSATERI, BOULDEN, and ROBINSON, Bankruptcy Judges.

## OPINION

ROBINSON, Bankruptcy Judge.

The Debtors, Maurice and Teresa Woods, appeal from the May 21, 1997 Order of the United States Bankruptcy Court for the Western District of Oklahoma. The Order granted the Trustee's Motion to Approve Sale of Oil and Gas Properties; denied the Debtors' Motion to Require a Trustee's Bond; and denied the Debtors' Motion for an Accounting. For the reasons set forth below, we AFFIRM the Order of the Bankruptcy Court.

### I. Background

The following factual findings included in the Bankruptcy Court's May 21, 1997 Order are not challenged by the Debtors. This case was commenced on December 17, 1984, when the Debtors filed a voluntary petition under Chapter 11. On May 1, 1987, Thomas J. Kenan (Kenan) was appointed as trustee of the Chapter 11 estate. Soon after such appointment, Maurice Woods advised Kenan that he believed he had certain causes of action against the estate of his deceased father or his heirs, as well as Southwest Petroleum, Inc., or Southwest Enterprises, Inc. These causes of action purportedly arose out of dispositions of property to the corporations made by the decedent on behalf of Maurice Woods.

After examining the merits, Kenan filed a Motion to Abandon to the Debtors such causes of action. On August 19, 1987, the Bankruptcy Court entered an order approving this motion. The order expressly abandoned any causes of action the Debtors may have had against the named persons or corporations; the order did not expressly mention abandonment of any oil and gas properties.

The Debtors' plan of reorganization was confirmed on July 10, 1991. The confirmed plan appointed the Chapter 11 trustee, Kenan, as the trustee to administer the plan of reorganization. The confirmed plan authorized Kenan to perform all acts necessary or appropriate to the consummation of the plan. The plan further provided that any assets recovered post–confirmation by Kenan, or coming into his possession as a result of the administration of this case, would be property of the estate.

The confirmed plan reserved in the Bankruptcy Court the authority to decide all issues regarding title to the assets, and to decide causes of action. It provided that the Bankruptcy Court had jurisdiction to correct any defect, cure any omission, and reconcile any inconsistency in the plan or the order that was necessary to carry out the purposes and intent of the plan. Jurisdiction continued for the court to enforce and interpret the terms and conditions of the plan.

Kenan filed a Motion to Approve Sale of Oil and Gas properties on April 21, 1993. Kenan filed his Chapter 11 Final Report and Application for Final Decree on May 13, 1993. On June 4, 1993, after confirmation but before the oil and gas properties had been sold, the Bankruptcy Court entered a Final Decree that sustained Kenan's application for a final decree and closed the bankruptcy case. By Order dated August 18, 1993, the Bankruptcy Court approved the sale of certain oil and gas properties to the three Packard Partners—Andrews Royalty, Inc., Gary J. Lamb and Jon M. Morgan, appellees. The Bankruptcy Court later found that the order closing the case was inadvertent and entered an order dated August 30, 1995, vacating its prior order closing the case, granting Kenan's motion to reopen the case, and enjoining the Debtors from interfering with the Packard Partners' interest in the oil and gas properties.

The Debtor appealed the August 30, 1995 order reopening the case to the United States District Court for determination of whether a Chapter 11 case may be reopened

to sell scheduled property of the Debtors that was not fully administered at the time of closing of the case notwithstanding 11 U.S.C. § 554(c), and whether the Bankruptcy Court erred in vacating the final decree. The District Court affirmed, and the Debtors' subsequent appeal to the Tenth Circuit Court of Appeals was dismissed as interlocutory.

After the case was reopened, Kenan filed an additional motion to approve a sale of certain oil and gas properties to the Packard Partners on March 6, 1997, in an attempt to correct any error that may have existed in the earlier August 18, 1993 sale, and to authorize the sale of properties inadvertently omitted from the prior sale motion. The confirmed plan of reorganization did not require such an order approving sale; however, it gave the Bankruptcy Court authority to enter such an order. After an April 24, 1997 hearing, and despite the Debtors' objection to the conveyance and sale, the Bankruptcy Court found it necessary to enter a sale order so that the Packard Partners could acquire peaceful enjoyment of the properties purchased. It is this May 21, 1997 Order that is the subject of this appeal.

## II. Discussion

Debtors argue that the central issue before the Court on appeal is whether or not, pursuant to the statutory language of 11 U.S.C. § 554(c), all of the oil and gas properties of the estate were abandoned to them upon the closing of the case. Debtors also argue the Bankruptcy Court made several errors in the Findings of Fact and Conclusions of Law that it included in its August 30, 1995 order reopening the bankruptcy case and vacating its prior order closing the case. However, in an earlier appeal by the Debtors, this order was affirmed by the United States District Court, and their further appeal to the Tenth Circuit Court of Appeals was dismissed as interlocutory.

■■■ We find that the law of the case doctrine should be applied to limit our review to issues not previously decided by the Dis-

trict Court. The doctrine is " 'a restriction self-imposed by the courts in the interest of judicial efficiency. It is a rule based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided.' " *Anthony v. Baker*, 955 F.2d 1395, 1397 n. 1 (10th Cir.1992) (quoting *Fox v. Mazda Corp. of America*, 868 F.2d 1190, 1194 (10th Cir.1989) (citations omitted)). Issues decided on appeal become the law of the case and are to be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir.), *reh'g denied*, 381 F.2d 34 (5th Cir.1967). Although application of the law of the case doctrine is discretionary, we find that it should be applied in this case. None of the exceptions listed above are applicable, and the Debtors will still be able to appeal to the Tenth Circuit when the appeal is no longer interlocutory.

Because we are not reviewing the August 30, 1995 ruling, the Debtors' arguments that allege errors in it will not be considered. Those arguments are: that § 105(a) of the Bankruptcy Code should not be construed to circumvent the plain language of § 554(c); that the Bankruptcy Court erroneously concluded that Debtors' actions constituted misconduct within the meaning of Federal Rule of Civil Procedure 60; that the Bankruptcy Court erroneously concluded that the Packard Partners were bona fide purchasers for value; that the Bankruptcy Court erroneously concluded that any errors in the descriptions of oil and gas properties are harmless errors; that equitable doctrines barred Kenan's March 6, 1997 motion to sell the oil and gas properties;[1] and that the Bankruptcy

---

1. Debtors argue that Kenan's motion to sell oil and gas properties was barred by the doctrines of laches and/or estoppel. In support of this argument, the Debtors point to the fact that it took

Kenan nearly two years after the Debtors began arguing that the properties were abandoned to them, to move to reopen this case. Debtors also assert that from September 1993 to July 1995,

Court erroneously concluded that the closing of these Chapter 11 proceedings was due to inadvertence or excusable neglect. Likewise, Debtors' arguments regarding whether or not, pursuant to the statutory language of 11 U.S.C. § 554(c),[2] all of the oil and gas properties of the estate were abandoned to the Debtors upon closing of the case, will need to be addressed on appeal to the Tenth Circuit. As the case stands right now, the order closing the case has been vacated; thus, without a review of whether or not the vacating of the order was proper, the arguments regarding abandonment cannot be addressed.

The remaining issues are: (1) whether disallowing the Debtors' request to bid during the April 24, 1997 sale of the properties of their estate violated due process; (2) whether the Trustee's March 6, 1997 motion to approve sale was void because he did not have the requisite bond in place, and therefore, did not qualify as a trustee; and (3) whether the Bankruptcy Court erroneously construed its August 19, 1987 order of abandonment. We review the Bankruptcy Court's conclusions of law *de novo*. *Tulsa Energy, Inc. v. KPL Prod. Co. (In re Tulsa Energy, Inc.)*, 111 F.3d 88, 89 (10th Cir. 1997).

**(1) Disallowing the Debtors' request to bid during the April 24, 1997 sale of the properties of their estate did not violate due process.**

■ The Debtors argue that the Bankruptcy Court's May 21, 1997 Order violates due process by disallowing Debtors the opportunity to bid during the sale of their oil and gas properties pursuant to 11 U.S.C. § 363. The Debtors did not express a desire to bid on the properties, either by filing a motion or in response to Kenan's motion to sell. Instead, they first raised the issue at the sale hearing, after the Bankruptcy Court ruled on the motion to sell.

In this case, Kenan sought approval of the sale under § 363 even though the confirmed plan of reorganization did not require an auction or a court order to sell the properties. The Debtors participated in the confirmation process and are bound by the terms of the confirmed plan. There may be concerns where a party seeks to liquidate substantial assets of the estate prior to confirmation pursuant to § 363. *See In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 982 (Bankr.N.D.N.Y.1988) (citations omitted) (noting that § 363 does not " 'authorize a debtor and the bankruptcy court "to short circuit the requirements of a reorganization plan by establishing the terms of the plan *sub rosa* in connection" with a proposed transaction' " (quoting *Institutional Creditors v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir.1986) (quoting *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir.1983)))); 3 *Collier on Bankruptcy* ¶ 363.02[4], at 363–19 (Lawrence P. King ed., 15th ed. rev.1997) (stating that "[b]ecause there is some danger that a section 363 sale might deprive parties of substantial rights inherent in the plan confirmation process, sales of substantial portions of a debtor's assets under section 363 must be scrutinized closely by the court"). Here, however, the case went through the plan confirmation process, and the confirmed plan gave Kenan the authority to sell the assets in question. In addition, Kenan sought approval under § 363. Thus, the Debtors were afforded the safeguards of the confirmation process in addition to the notices provided by § 363. *See Copy Crafters Quickprint*, 92 B.R. at 983 (noting that notice of a pre-confirmation transaction under § 363(b) serves as a substitute for the safeguards of disclosure, voting, acceptance and confirmation were it instead part of a Chapter 11 plan). Debtors clearly had adequate notice and the opportu-

---

many producers of oil and gas properties determined that the Bankruptcy Court's August 18, 1993 order of sale was void for lack of jurisdiction, and returned production revenues to the Debtors. The Bankruptcy Court's May 21, 1997 Order does not rule on the laches and/or estoppel argument. The argument really goes to the August 30, 1995 ruling.

**2.** 11 U.S.C. § 554(c) provides that "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."

nity to be heard. They waited until the Bankruptcy Court had ruled on the second motion to sell before voicing a desire to bid on the property. The Bankruptcy Court's refusal to entertain this request at this stage of the proceeding did not deprive the Debtors of due process.

**(2) The Trustee's March 6, 1997 motion to approve sale was not void for failure to have the requisite bond in place.**

■ Debtors argue that the Bankruptcy Court erred in determining that Kenan qualified as a trustee without having posted the requisite bond pursuant to 11 U.S.C. § 322. Section 322 provides that:

> Except as provided in subsection (b)(1), a person selected under section … 1104 … of this title to serve as trustee in a case under this title qualifies if before five days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties.

11 U.S.C. § 322(a). Debtors argue that Kenan was required to file a bond within five days of the order reopening this case. Kenan argues that he was not "selected under section … 1104," as stated in § 322, but rather was named in the plan of reorganization and approved by the creditors and interest holders. The Bankruptcy Court, citing § 1141 of the Bankruptcy Code, held that a bond was not required because the plan had been confirmed and the plan did not provide for a bond.

Section 1141(a) declares that "the provisions of a confirmed plan bind the debtor," among others, so the Debtors are bound by the terms of the confirmed plan that authorized Kenan to conduct the sale and did not make his authority contingent on having a bond in place. Even if Kenan was required to be bonded under other provisions of the Code, cases addressing § 322 have held that actions taken by trustees who failed to have the requisite bond in place were nevertheless valid. *See W.J. Servs., Inc. v. Commercial State Bank,* 990 F.2d 233, 234 (5th Cir.), *cert. denied,* 510 U.S. 948, 114 S.Ct. 391, 126 L.Ed.2d 339 (1993); *Varalli v. PTL Intermo-*

*dal (In re Metro Shippers, Inc.),* 95 B.R. 366, 370 n. 5 (Bankr.E.D.Pa.1989) (noting that although § 322 requires a trustee to post a bond in order to qualify as trustee, courts have long held that trustees' actions prior to posting a bond are valid); *In re Holiday Isles, Ltd.,* 29 B.R. 827, 829 (Bankr.S.D.Fla. 1983) (stating that "[c]ourts faced with a trustee's failure to technically qualify have long recognized the concept of a 'de facto' trustee of a bankrupt estate"); *In the Matter of Upright,* 1 B.R. 694, 698 (Bankr.N.D.N.Y. 1979). Both § 1141(a) and the above–cited cases convince us that Kenan's motion to approve sale was not invalid for failure to have a bond in place.

**(3) The Bankruptcy Court did not erroneously construe its August 19, 1987 order of abandonment.**

■ In its oral findings of fact and conclusions of law made at the April 24, 1997 hearing, the Bankruptcy Court ruled that its prior abandonment order only included any causes of action the Debtors may have had against the corporations, and did not include any oil and gas properties. *See* Appellants' Appendix of Record, Tab 3 at p. 116. Debtors argue that the causes of action accrued as a result of oil and gas properties having been withheld from Maurice Woods by the probate estate. Thus, Debtors argue that they obtained these properties as a result of the causes of action. However, if the Debtors did receive properties as a result of the causes of action, they failed to produce any evidence as to which properties they received and when they received them.

The Transcript of the April 24, 1997 proceedings, at pages 98–100, reads as follows:

> THE COURT: Well, are you saying then some of the property that he [Trustee] now seeks to sell were acquired as a result of a claim he brought against Southwest?
>
> MR. WOODS: No. He abandoned that claim against Southwest, and they were acquired as a result of the Woods further activities outside the bankruptcy estate after his abandonment.
>
> THE COURT: They were acquired—

MR. WOODS: Right. The Woods—after the abandonment the Woods went to Southwest Petroleum and apparently at some point moved to get the mineral deeds.

THE COURT: Now, what specific properties are we talking about?

MR. WOODS: Judge, we are talking about the Southeast Quarter of Section 10, Stephens County, Oklahoma, Southeast Quarter of Section 15, of Lincoln County Oklahoma, the Northeast Quarter of Section 22, Lincoln County, Oklahoma, Northwest Quarter of Section 23, Lincoln County, Oklahoma, and a great deal of properties in Andrews County in the state of Texas, Sections 15, 16, 17, 14, 5, 20, 21. There's a bunch of them here that's attached to this exhibit.

THE COURT: What proof is there in the record of where those interests, how they came into the estate?

MR. WOODS: The proof would be under the fact that there was a recognized cause of action against Southwest Petroleum, and Mr. Kenan recognized that cause of action.

THE COURT: Then, did these properties come from Southwest to someone?

MR. WOODS: Yes. They were to come from Southwest to Mr. Woods. They never did; thus, creating the cause of action, which he then abandoned.

THE COURT: All right. Who has title to these properties now?

MR. WOODS: I don't know.

THE COURT: Well, are you—

MR. WOODS: Mr. Kenan, I think, has attempted to sell them, so I don't know who has the property, the title to it.

THE COURT: Or sell whatever interest the estate might have.

MR. WOODS: Right. If the estate had any type. We contend the estate didn't have any after he abandoned them.

THE COURT: But, see, what I don't know from this record if they came to the estate as a result of some claim against Southwest or came from some other source.

MR. WOODS: It would have been—the claim would have been in the nature of a lawsuit against Southwest.

THE COURT: Did anyone ever sue Southwest?

MR. WOODS: No. They agreed, I believe, to go ahead and transfer the properties.

THE COURT: You see, there's no—I don't have any evidence.

MR. WOODS: I think there was some testimony from 1995 on this.

THE COURT: Well, I don't remember any 1995 testimony.

MR. WOODS: That's when, I think, Mrs. Woods took the stand and testified as to those. I'd have to check the record and give you exactly what occurred then.

THE COURT: All right. Well, go ahead.

The Bankruptcy Court found that the Debtors failed to produce evidence of any properties obtained as a result of the abandoned causes of action. The Bankruptcy Court's finding is not clearly erroneous.

Based on the foregoing, we conclude that the decision of the Bankruptcy Court should be AFFIRMED.