In re Steve A. BUCKNER, Debtor.

In re John Marshall TUTTLE and Leona Julia Tuttle, Debtors.

FARMERS HOME ADMINISTRATION, Appellant,

v.

Steve A. BUCKNER, Appellee.

John Marshall TUTTLE and Leona Julia Tuttle, Plaintiffs—Appellees,

v.

UNITED STATES of America, Farmers Home Administration, Commodity Credit Corporation, and Agricultural Stabilization and Conservation Service, Defendants—Appellants.

BAP Nos. KS–97–047, KS–97–048. Bankruptcy Nos. 90–42105, 93–40549. Adversary No. 93–7189.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 5, 1998.

Submitted on the briefs: *

Frank W. Hunger, Assistant Attorney General; Jackie N. Williams, United States Attorney; Connie R. Calvert, Assistant United States Attorney, Wichita, KS.; and J. Christopher Kohn, Tracy J. Whitaker, Cynthia L. Alexander, and Margaret L. Baskette, Attorneys, Civil Division, Department of Justice, Washington, DC, for Appellants.

Jan Hamilton of Hamilton, Peterson & Keeshan, Topeka, KS, for Appellees.

Before BOULDEN, CORNISH, and MATHESON, Bankruptcy Judges.

OPINION

BOULDEN, Bankruptcy Judge.

These cases involve a consolidated appeal of a Judgment on Decision ruling that Farmers Home Administration (FmHA) could not setoff under 11 U.S.C. § 553[1] prepetition payments owed to FmHA against payments that were owed to the debtors by the Conservation Reserve Program (CRP). The various governmental agencies (collectively the United States) appealed the Judgment on Decision to this court. Because we conclude that the bankruptcy court abused its discretion in failing to follow the law of the case, and that the decision denying the United States' right to setoff was incorrect, we reverse.

## I. *Background*

In 1984 Steve A. Buckner (Buckner) and John M. and Leona J. Tuttle (the Tuttles) each borrowed money from FmHA. These debts were secured by mortgages on Buckner's home and the Tuttles' crops, respectively. Buckner and the Tuttles also entered into contracts with the CRP in 1987 and 1989. They agreed that for ten years they would not farm and would conduct conservation practices on certain depleted land in exchange for an annual payment from the CRP consisting of a rental payment per acre of land and a share of the costs of the conservation practices. No funds were due each year from the CRP to Buckner or the Tuttles until the government's fiscal year ended with Buckner and the Tuttles in compliance with the contracts, and until Congress made funds available to pay on CRP contracts the following fiscal year. When Buckner and the Tuttles defaulted under their FmHA loans, FmHA notified the Agricultural Stabilization and Conservation Service (ASCS), the entity that administered the CRP, of its intent to exercise an administrative offset of amounts due to Buckner and

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

1. Future references are to Title 11 of the United States Code unless otherwise noted.

the Tuttles under their respective CRP contracts.

## A. The Buckner Case

Buckner filed a petition seeking relief under chapter 13 in November of 1990, prior to FmHA exercising its setoff rights. FmHA filed motions for relief from the automatic stay to allow it to setoff Buckner's annual 1990 CRP program payment of $5,562.20, as well as future CRP payments, against its claim. The bankruptcy court granted FmHA relief from stay as to the CRP payment that was owed when Buckner filed his chapter 13 petition, but denied it relief as to all future payments that Buckner would earn by post-petition performance of the CRP contract (Bankruptcy Court Order). FmHA appealed the Bankruptcy Court Order to the district court (District Court Appeal).

While the District Court Appeal was pending, FmHA and Buckner entered into an agreement regarding his chapter 13 plan. Buckner agreed to assume the CRP contract and make payments toward FmHA's secured claim. The claim amount was fixed at the stipulated value of his home. Buckner's payments on FmHA's secured claim would be paid with funds received in the future under the CRP contract. At the conclusion of payments pursuant to the plan, Buckner was required to refinance his home and pay FmHA whatever it had not yet been paid on the amount of its secured claim. FmHA's claimed right to setoff future CRP payments was not treated as part of its secured claim as allowed under § 506(a).

FmHA sought a continuance of the confirmation hearing on Buckner's plan, arguing that the plan should not be confirmed until there was a resolution of FmHA's right to setoff through the District Court Appeal. The bankruptcy court denied FmHA's motion for a continuance, stating that if FmHA was not satisfied with its treatment under Buckner's plan it should appeal the confirmation order and seek consolidation of such an appeal with the District Court Appeal. The bankruptcy court entered an order confirming Buckner's plan in June of 1991. FmHA did not appeal the confirmation order.

According to the bankruptcy court, the fact that the confirmed plan did not treat future CRP payments as part of FmHA's allowed secured claim was not communicated to the district court in the District Court Appeal. In March of 1994, almost three years after the confirmation order became final, a decision was issued in the District Court Appeal. In *In re Buckner*, 165 B.R. 942 (D.Kan.1994) (District Court Order), the district court reversed the Bankruptcy Court Order, concluding that the United States was entitled to setoff because both the debt CRP owed to Buckner for CRP payments and FmHA's claim against Buckner for mortgage payments arose prepetition. The District Court Order remanded the matter "for a determination of whether the government [was] entitled to relief from the automatic stay under 11 U.S.C. § 362." *Id.* at 947.

In August of 1996, two years after the District Court Order was issued and after the Tenth Circuit ruled on setoff rights in an unrelated case involving CRP payments, *Turner v. Small Business Administration (In re Turner)*, 84 F.3d 1294 (10th Cir.1996) (en banc) (government should be considered a unitary creditor for purpose of setoff under § 553), the bankruptcy court held an evidentiary hearing in Buckner's case. We do not know what prompted this hearing, whether it was pursuant to a motion or as a result of the District Court Order. However, the evidence presented described the nature of the CRP program. At the time of the hearing Buckner had completed his chapter 13 plan payments, and the parties contested the government's right to setoff a CRP payment Buckner became entitled to receive under his prepetition contract late in 1996, after his plan was completed. At the close of the evidence, the bankruptcy court took the matter under advisement.

## B. The Tuttles' Case

In the Tuttles' case, ASCS approved FmHA's request for an administrative setoff, and several months later the Tuttles filed a petition seeking relief under chapter 11. The Tuttles filed an adversary proceeding seeking turnover and injunctive relief to obtain an order that a CRP payment that was

withheld be paid, and that all future CRP payments be made as they became due. The bankruptcy court allowed the Tuttles to use CRP payments upon providing adequate protection to FmHA in the form of a second mortgage. The bankruptcy court subsequently stayed this adversary proceeding as well as the Tuttles' main case pending resolution of the District Court Appeal in Buckner's case. There is no record before us that the Tuttles assumed the CRP contract, or of the terms of or confirmation of any plan in the Tuttles' chapter 11 case. In 1994, after the District Court Order was issued in Buckner's case, FmHA moved for relief from stay to effect a setoff in the Tuttles' case. This motion was not resolved and was still pending at the time the bankruptcy court issued its Judgment on Decision.

### C. The Judgment on Decision

In July of 1997, three years after the District Court Order was issued [2] and one year after the evidentiary hearing, the bankruptcy court issued the Judgment on Decision supported by a Memorandum Decision (collectively the Judgment), reported at *In re Buckner*, 211 B.R. 46 (Bankr.D.Kan.1997), which is the subject of this appeal. The Judgment was issued as a consolidated ruling in both Buckner's case and in the adversary proceeding pending between the Tuttles and the United States. The bankruptcy court ruled that the United States did not have a right to setoff because Buckner and the Tuttles incurred their debts to FmHA prepetition, but Buckner and the Tuttles' CRP payments were earned by them and funded by Congress postpetition. *Id.* at 46. In the Buckner case, the bankruptcy court refused to apply the District Court Order that gave the United States a right to setoff. Instead, the bankruptcy court concluded that the District Court Order was entered in an appeal that was moot as a result of the unappealed order confirming Buckner's chapter 13 plan, and that the district court was not privy to important facts revealed at the August 1996 hearing. Therefore, the bankruptcy court determined the District Court Order was not controlling under the law of the case doctrine.

### II. *Appellate Jurisdiction and Standard of Review*

We have jurisdiction over this appeal. The Judgment is a "final" order, subject to appeal under 28 U.S.C. § 158(a)(1), and the United States' notice of appeal was timely filed. Fed. R. Bankr.P. 8002. The parties have consented to this court's jurisdiction by failing to elect to have their respective appeals heard by the district court. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. L.R. 8001–1.

We accept the factual findings reported in *Buckner*, 211 B.R. at 47–51, because none are contested by the parties. Since we have not been supplied with a record that would allow review of the otherwise uncontested findings, we accept them over any inconsistent statements of fact made by the parties in their respective briefs. *Deines v. Vermeer Mfg. Co.*, 969 F.2d 977, 979–80 (10th Cir.1992) (and cases cited therein) (appellant has burden to establish evidentiary record).

We review that portion of the Judgment refusing to apply the District Court Order in Buckner's case as the law of the case under an abuse of discretion standard. The law of the case doctrine is a discretionary rule of practice in the courts. *See, e.g., Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (law of the case expresses practice of courts to refuse to reopen what has been decided); *United States v. Monsisvais*, 946 F.2d 114, 116 (10th Cir.1991) (law of the case is only a rule of practice and not a limit on a court's power). A ruling that is discretionary is reviewed utilizing an abuse of discretion standard. *See Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546–47, 101 L.Ed.2d 490 (1988) (stating generally that matters of discretion are reviewable under an abuse of discretion standard). "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the ap-

---

**2.** Buckner appealed the District Court Order to the Tenth Circuit, but this appeal was dismissed based on the Tenth Circuit's conclusion that the order appealed from was interlocutory. *In re Buckner*, 66 F.3d 263 (10th Cir.1995).

pellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman, Oklahoma,* 926 F.2d 1539, 1553–54 (10th Cir.1991)). An abuse of discretion may occur if a court bases its ruling on a view of the law that is erroneous. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *accord Ute Indian Tribe v. State of Utah,* 114 F.3d 1513, 1520 (10th Cir.1997), *cert. denied,* ___ U.S. ___, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998).

We review the Judgment *de novo* to determine if the bankruptcy court erred as a matter of law in denying the United States a right to setoff. *Underwood,* 487 U.S. at 558, 108 S.Ct. at 2546 (questions of law are reviewable *de novo* ); *Lilly v. Fieldstone,* 876 F.2d 857, 858 (10th Cir.1989) (standard of review is the same as that was applied by the trial court in making its ruling).

### III. *Discussion*

### A. Failure to Follow the Law of the Case Set Forth in the District Court Order was an Abuse of Discretion.

In Buckner's case the bankruptcy court disallowed the United States' right to setoff after the District Court Order reached the opposite conclusion. The United States argues that the bankruptcy court was not free to revisit the setoff issue in Buckner's case because it was bound under the doctrine of law of the case to apply the District Court Order. We agree.

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1390–91, 75 L.Ed.2d 318 (1983), *quoted in Monsisvais,* 946 F.2d at 115; *accord Ute Indian Tribe,* 114 F.3d at 1520. In *Monsisvais,* the Tenth Circuit quoted with approval the First Circuit's statement in *United States v. Rivera–Martinez,* 931 F.2d 148, 150 (1st Cir.1991) (citing *Arizona,* 460 U.S. at 618, 103 S.Ct. at 1390–91), that:

> [I]n terms of the dynamics between trial and appellate courts, the phrase "law of the case" signifies, in broad outline, that a decision of an appellate tribunal on a particular issue, unless vacated or set aside, governs the issue during all subsequent stages of the litigation in the nisi prius court, and thereafter on any further appeal.

946 F.2d at 115–16; *accord Stifel, Nicolaus & Co. v. Woolsey & Co., Inc.,* 81 F.3d 1540, 1543 (10th Cir.1996) (a trial court may not reconsider a question decided by an appellate court). The policy behind the doctrine is to promote both judicial efficiency and the public policy that litigation should come to an end, and the doctrine is designed to quickly resolve disputes by preventing continued reargument of issues already decided. *Anthony v. Baker,* 955 F.2d 1395, 1397 n. 1 (10th Cir.1992); *accord Wilson v. Meeks,* 98 F.3d 1247, 1250 (10th Cir.1996). It also serves the purpose of "assuring [trial] court compliance with the decisions of the appellate court." *Monsisvais,* 946 F.2d at 116. The law of the case doctrine is applicable in Buckner's case because the District Court Order squarely determined the United States' right to setoff, the same issue decided in the Judgment. *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,* 94 F.3d 1407, 1410 (10th Cir.1996) (law of the case doctrine applicable if appellate court explicitly issues decision on the merits of claim sought to be precluded), *cert. dismissed,* ___ U.S. ___, 117 S.Ct. 1331, 137 L.Ed.2d 491 (1997), *and cert. denied,* ___ U.S. ___, 117 S.Ct. 1427, 137 L.Ed.2d 536 (1997).

Issues decided on appeal become the law of the case and are to be followed in all subsequent proceedings in the same case in the trial court, " 'unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.' " *Monsisvais,* 946 F.2d at 117 (quoting *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.), *reh'g denied,* 381 F.2d 34 (5th Cir.1967));

*accord Stifel,* 81 F.3d at 1543 (citing cases); *Woods v. Kenan (In re Woods),* 215 B.R. 623, 625 (10th Cir. BAP 1998). The Tenth Circuit reads these exceptions to the law of the case doctrine narrowly, requiring trial courts to apply the law of the case unless one of the exceptions specifically applies. *Monsisvais,* 946 F.2d at 117 (following both *United States v. White,* 846 F.2d 678, 685 (11th Cir.), *cert. denied,* 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 568 (1988), and *Leggett v. Badger,* 798 F.2d 1387, 1389 n. 2 (11th Cir.1986)).

The Judgment stated two reasons why the District Court Order was not law of the case: (1) the failure to appeal the order confirming Buckner's chapter 13 plan that treated the United States' claim as secured only to the extent of the value of Buckner's home, rendered the District Court Appeal moot; and (2) the record in the District Court Appeal did not contain evidence later presented to the bankruptcy court showing that, except for the 1990 payment, no CRP money was available for setoff when Buckner filed chapter 13. *Buckner,* 211 B.R. at 55–56. We interpret these reasons to have been a ruling that the District Court Order was clearly erroneous and would work a manifest injustice, and that subsequent evidence adduced at the August 1996 hearing before the bankruptcy court was substantially different from that relied upon in the District Court Order.

▮▮▮▮ The mootness argument set forth in the Judgment relies upon § 1327(a), which provides that a confirmed plan binds creditors to the terms of the plan. *See Paul v. Monts,* 906 F.2d 1468, 1471 (10th Cir.1990) (per curiam) (under § 1141(a), which is similar to § 1327(a), a confirmed plan binds the debtor and creditors); *Andersen v. Higher Education Assistance Foundation (In re An-*

*dersen),* 215 B.R. 792 (10th Cir. BAP 1998). Under this theory, even if the United States had a valid setoff right prepetition, the order confirming Buckner's chapter 13 plan, which fixed the value of the United States' secured claim pursuant to § 506[3] at the value of Buckner's home, had the effect of terminating the United States' right to setoff. As a result, the bankruptcy court's final confirmation order, which was entered prior to the District Court Order, rendered the District Court Appeal moot.

We disagree with the mootness analysis contained in the Judgment. We recognize that mootness is a jurisdictional issue that must be analyzed at all stages of litigation, *Arizonans For Official English v. Arizona,* 520 U.S. 43, ——, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997); *Yellow Cab Cooperative Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Cooperative Ass'n),* 132 F.3d 591, 594 (10th Cir.1997), and have no quarrel with the bankruptcy court reviewing whether the setoff issue was moot *when remanded.* It did not do so. Instead, the Judgment essentially *vacated* the District Court Order, concluding that it had been entered when the setoff issue was moot. Unhampered by the District Court Order, the Judgment then went on to rule on the exact issue that was the subject of the District Court Appeal: whether the United States has a right to setoff the CRP payments.[4] The bankruptcy court had no authority to vacate the District Court Order, which was issued by a district court sitting as an appellate court in bankruptcy. The district court was the appropriate court to determine its jurisdiction over the District Court Appeal, including whether or not the bankruptcy court's confirmation order mooted[5] the District Court Appeal, or the under-

---

3. Section 506 provides in relevant part:

   (a) An allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim to the extent ... of the amount subject to setoff, ... and is an unsecured claim to the extent that the ... amount so subject to setoff is less than the amount of such allowed claim.

4. The bankruptcy court reviewed the setoff issue in the context of post-consummation CRP payments, while the facts reviewed in the District Court Order related to all future CRP payments

Buckner was to receive. The difference between post-filing and post-consummation CRP payments owed to Buckner is irrelevant for the purpose of determining the setoff issue, although it may have a bearing on whether the automatic stay remains in effect. 11 U.S.C. § 362(c).

5. The United States argues before us that the setoff issue is moot because between the August 1996 hearing and the issuance of the Judgment, Buckner made "substantially" all of the payments under the confirmed chapter 13 plan. Therefore, when the Judgment was issued the automatic stay was no longer in effect. Howev-

lying issue of whether the United States' setoff rights survived confirmation without the need for an appeal of the confirmation order.[6]

For purposes of applying the law of the case doctrine, the sole concern was whether the District Court Order was "clearly erroneous" in light of the confirmation order. *See Monsisvais,* 946 F.2d at 117. Upon a review of the law, we conclude that the District Court Order was not "clearly erroneous," notwithstanding the bankruptcy court's confirmation order.

The issue of whether setoff rights can be modified by a confirmed chapter 13 plan is not settled. *See* 5 Collier on Bankruptcy § 553.08 (Lawrence P. King ed., 15th ed. rev. 1997). The Ninth Circuit, in *Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group),* 963 F.2d 1269, 1274–78 (9th Cir.), *cert. denied,* 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992) (collecting cases), discussed the direct conflict between the prepetition setoff rights preserved under § 553 and the binding nature of a confirmed plan under § 1141. The Ninth Circuit concluded that for historical reasons, to ensure the equitable treatment of creditors, and because of the language of the statute, § 553 takes precedence over § 1141(a), and prepetition setoff rights are unaffected by a confirmed chapter 11 plan. *Id; but see United States v. Continental Airlines (In re Continental Airlines),* 134 F.3d 536 (3d Cir. 1998). *De Laurentiis* relied, in part, upon the Tenth Circuit's ruling in the chapter 7 case of *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1539 (10th Cir.1990), that "a discharged debt may be setoff upon compliance with the terms and conditions stated in section 553 of the Code." Under *Davidovich,* therefore, it is arguable that the bankruptcy court's unappealed confirmation order had no effect on the United States' alleged setoff right. The District Court Order is not "clearly erroneous" and, absent the application of some other exception, must be applied in Buckner's case as law of the case.

■ The second reason stated by the bankruptcy court for refusing to apply the District Court Order as the law of the case in Buckner's case was that the evidence received by it at the evidentiary hearing on remand was unavailable to the district court in the District Court Appeal. While, as discussed above, substantially different evidence is an exception to the law of the case doctrine, this exception does not apply unless the "new" evidence was unavailable to the parties during earlier proceedings. As the Tenth Circuit has recognized:

> "The 'different evidence' exception to the law of the case doctrine does not apply when a trial court gratuitously jettisons the rule in order to address an issue explicitly decided, and foreclosed, in an earlier appeal in the same case. Any other outcome would severely undermine the efficacy of the doctrine. If, by the simple expedient of flaunting the law of the case, a trial court which should have deferred to an appellate court's resolution of an issue could proceed to address the issue anew, then the doctrine would disappear into thin air."

*Monsisvais,* 946 F.2d at 117 (quoting *Rivera–Martinez,* 931 F.2d at 151) (trial court reversed when, upon remand, instead of dismissing the case or trying the case without the benefit of certain excluded evidence, the trial court allowed the government to provide the evidence the circuit found lacking in the first hearing). The evidence presented at the hearing in Buckner's case involved the administration of the CRP. *Buckner,* 211 B.R. at 47–50. This evidence was not "new" evidence subject to any exception under the

---

er, the record before us does not indicate when chapter 13 plan payments were made, if the CRP payments revested in Buckner upon confirmation and were no longer property of the estate, or if a chapter 13 discharge was issued.

**6.** The United States maintains Buckner waived his objection to setoff because he failed to raise the issue of the effect of the confirmation order on the setoff issue. This argument has no merit because both parties have a duty to bring to the attention of a federal tribunal, " 'without delay,' facts that may raise a question of mootness." *Arizonans for Official English v. Arizona,* 520 U.S. 43, —— n. 23, 117 S.Ct. 1055, 1069 n. 23, 137 L.Ed.2d 170 (1997) (quoting *Board of License Comm'rs v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985)).

law of the case doctrine.[7] None of the exceptions to the law of the case doctrine apply and the District Court Order should have been applied as the law of the case in Buckner's case.

For the reasons discussed herein, the Judgment entered in Buckner's case was issued in violation of the law of the case doctrine. Accordingly, we reverse the Judgment in Buckner's case.

**B. The Judgment Denying the United States' Right to Setoff in the Tuttles' Case is in Error.**

The Judgment held that § 553(a)[8] did not allow the United States to setoff the debt it owed to the Tuttles against FmHA's claim asserted against the Tuttles because the CRP payments were earned by the Tuttles and funded by Congress postpetition. *Buckner*, 211 B.R. at 46. We determine this conclusion to be in error because the United States' obligation to remit CRP payments to the Tuttles represents a valid and enforceable prepetition debt.

> [S]etoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' Although no federal right of setoff is created by the Bankruptcy Code, ... § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.

*Citizens Bank v. Strumpf*, 516 U.S. 16, 18–20, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). Generally, a right to setoff is not affected by bankruptcy. *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir.1990) (per curiam). If a prepetition right to setoff exists under nonbankruptcy law, § 553(a) only authorizes a creditor to setoff "valid and enforceable" prepetition debts owed by it to the debtor against "valid and enforceable" prepetition claims owed by the debtor to the creditor. *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 & 963 (10th Cir.1996) (debtors' claim against creditor was not valid or enforceable until creditor accepted credit card invoices that complied with contract). The debts and claims in question must be "mutual," *i.e.*, "between the same parties standing in the same capacity." *Davidovich*, 901 F.2d at 1537.

The bankruptcy court found that the United States has a right to setoff under federal law,[9] FmHA and ASCS are unitary creditors for purposes of § 553(a),[10] and the United States' mortgage claim against the Tuttles is a prepetition claim. These conclusions, set forth in the Judgment, have not been challenged on appeal. The issue is whether the debt the United States owed to the Tuttles is a prepetition debt. *Buckner*, 211 B.R. at 52. If the debt is a prepetition debt, the United States has a right to setoff; if the debt is a postpetition debt, the United States does not have a right to setoff. 11 U.S.C. § 553(a); *Peterson Distrib.*, 82 F.3d at 963; *Davidovich*, 901 F.2d at 1538.

Courts have struggled to determine whether the obligation to make CRP payments constitute a debt owing before the commencement of the case because the contract was entered into prepetition, or a postpetition obligation because duties are performed by both parties postpetition. The result is a

---

7. The District Court Order relied upon *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993), in which CRP contracts entered into in 1987 and 1989 provided that Congress must appropriate funding for payments each year and that ASCS's agreement to pay was subject to availability of funds. It is clear from *Gerth* that these facts related to CRP contracts entered into in 1987 were available at the time of the first hearing before the bankruptcy court and were not "new" evidence at the time of the evidentiary hearing before the bankruptcy court in 1996.

8. Section 553(a) provides, in relevant part, that:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

9. 7 C.F.R. § 1403.7 authorizes setoffs between governmental entities, including debts due under the CRP. *See* 7 C.F.R. § 1403.7(j)(1).

10. *Turner*, 84 F.3d at 1294.

split between those cases relying on the minority position expressed in *Walat Farms, Inc. v. United States· (In re Walat Farms, Inc.)*, 69 B.R. 529 (Bankr.E.D.Mich.1987) (CRP contract is an executory contract that, when assumed postpetition, converts the right to receive payments to a postpetition debt owed to the debtor thus destroying mutuality and preventing setoff),[11] versus the majority position set forth in *United States v. Gerth*, 991 F.2d 1428 (8th Cir.1993), *Greseth v. Federal Land Bank (In re Greseth)*, 78 B.R. 936 (D.Minn.1987), and *Moratzka v. United States (In re Matthieson)*, 63 B.R. 56 (D.Minn.1986) (setoff right exists because CRP debt is a prepetition debt; obligation to pay CRP payments was absolutely owing and definite as to liability prepetition, but not yet due or liquidated, because the contract requirements were contractual duties and promises rather than conditions precedent). See *In re Allen*, 135 B.R. 856 (Bankr. N.D.Iowa 1992), for a discussion of the split of authority. *Gerth*, one of the majority cases, interprets the words "debt" and "claim" in § 553(a) to be "coextensive," thereby allowing "debt," like "claim," to be read broadly to include unliquidated, contingent, unmatured, and disputed debts. 991 F.2d at 1433; *see* 11 U.S.C. § 101(5).

■ The District Court Opinion followed the majority view, *see Buckner*, 165 B.R. at 946–47, but the Judgment criticized the interpretation of "debt" used by the *Gerth* line of cases.[12] The Judgment rejected the view that the meanings of "debt" and "claim" are coextensive, stating:

> In § 101, "debt" is defined to be "liability on a claim;" § 101(12), and "claim" is defined to be "right to payment" or "right to

an equitable remedy for breach of performance if such breach gives rise to a right to payment" whether or not either of right "is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," § 101(5). This Court believes the words "liability on" must add something to the meaning of "debt" that distinguishes it from "claim," and that something is the elimination of any contingencies, conditions, doubts, or disputes about the claim. Thus, although they have not necessarily expressed this reasoning, some courts have correctly specified the creditors's debt to the debtor must be *"absolutely owed" and " 'all the transactions which gave rise to [the] debt occurred prior to the petition date.' "* *Braniff Airways[, Inc.] v. Exxon [Co., U.S.A.]*, 814 F.2d [1030,] at 1036 [ (5th Cir.1987) ] (*quoting In re Delta Energy Resources, Inc.*, 67 B.R. 8, 12 (Bankr. W.D.La.1986)). Where postpetition events must occur before the creditor will be obliged to pay the debtor, the debt cannot be set off under § 553(a).

*Buckner*, 211 B.R. at 54 (emphasis added). Since the Tuttles performed conservation work on and did not plant the land, and since Congress appropriated funds for CRP payments postpetition, the bankruptcy court concluded the obligation to pay the CRP payments was not "absolutely owed" and thus constituted a postpetition debt. *Id.*

■ We conclude that the interpretation recited in the Judgment that "debt" is not "coextensive" with "claim" is incorrect, and thus the underpinning of the decision on

---

**11.** The Judgment did not rely on the assumption of executory contract theory discussed by the District Court Order. *See Buckner*, 165 B.R. at 947. Many courts have analyzed the CRP setoff issue under a theory of assumption of executory contract, concluding that CRP contracts are those in which neither party has completely performed and the obligations of each party remain "complex." *Workman v. Harrison*, 282 F.2d 693, 699 (10th Cir.1960). The conclusion that a contract is executory provides the debtor significant benefits since it allows the debtor to either accept or reject the contract. *See* 11 U.S.C. § 365. If a court concludes that a contract is absolutely owing and not executory, it precludes the debtor

from utilizing the significant reorganization benefits of either assumption or rejection. There is no evidence in the record that the Tuttles' CRP contract, if executory, was assumed by them.

**12.** We note that although the District Court Order is binding in Buckner's case as law of the case, *see* discussion *supra*, the District Court Order is merely persuasive, but not binding, in the Tuttles' case. *See* 1B James Wm. Moore, Moore's Fed. Practice ¶ 0.402[1] (2d ed.1996) (opinion of single judge in a multi-judge district is not binding precedent in future cases, but merely persuasive).

setoff is in error. In *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Supreme Court, in construing the definition of "debt" set forth in § 101(12) in the context of § 523(a)(7), stated:

> Our construction of the term "debt" is guided by the fundamental canon that statutory interpretation begins with language of the statute itself. Section 101(11) [13] of the Bankruptcy Code defines "debt" as a "liability on a claim." *This definition reveals Congress' intent that the meanings of "debt" and "claim" be coextensive* .... Congress chose expansive language in both definitions....

495 U.S. at 558, 110 S.Ct. at 2130–31 (citations omitted) (emphasis added). Based on this conclusion, the Court went on to determine whether a "debt" existed under definition of "claim." *Id.* at 562–63, 110 S.Ct. at 2132–33. This broad reading of the word "debt" is controlling in the context of § 533(a).

Even if *Davenport* was not controlling, the interpretation in the Judgment that to constitute a "debt," liability must be "absolute" on the petition date with no contingencies whatsoever is not supported by case law. Although both the Eighth Circuit in *Gerth* and the Fifth Circuit in *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir.1987), state that a debt must be "absolutely" owed, these courts ultimately conclude that unmatured, contingent, or unliquidated obligations may be "absolutely" owed as of the petition date and capable of setoff.[14] The Tenth Circuit has not even focused on the "absolute" nature of a debt as of the petition date, much less an interpretation of "absolute" that excludes unmatured, contingent, or unliquidated obligations. Instead, under Tenth Circuit law, a "debt" or a

"claim" subject to setoff under § 553(a) must be "valid and enforceable" on the petition date. *Peterson Distrib.*, 82 F.3d at 959–63; *Davidovich*, 901 F.2d at 1537; *see Davenport*, 495 U.S. at 559, 110 S.Ct. at 2131 (in interpreting "claim" and, therefore, "debt," the Court noted that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation....."). This broader interpretation of "debt" is consistent with the Tenth Circuit's ruling that a debt for which liability attaches, although the amount remains unascertained, is nonetheless subject to setoff. In a pre-Code case, the Tenth Circuit stated:

> [T]he tax refund due the bankrupt ... was not due on the date of the filing of the petition in bankruptcy in the sense that there was at that time no legal duty on the United States to make such refund since no claim therefor had been filed.... But the overpayments had been made and the liability therefor existed. The amount of such liability was not ascertained and determined until later. But it existed in an undetermined amount at the time of the filing of the petition in bankruptcy. And the mere fact that the amount of the liability was not determined until after the intervention of bankruptcy does not deprive the Government of the right of setoff it is [sic] otherwise would have existed.

*Luther v. United States*, 225 F.2d 495, 498 (10th Cir.1954).

Any examination of whether the United States' obligation to make CRP payments constitutes a "debt" must focus, therefore, on whether the debt was "valid and enforceable" at the time the Tuttles filed their bankruptcy case. Based on the evidence adduced at the August 1996 hearing, the Judgment stated:

> *Trust Co.*, 806 F.2d 961, 968 (10th Cir.1986), in which the Tenth Circuit indicated that "it appears to be the general rule that contingent claims are not a proper subject of setoff," the bank was only a confirming or guarantor bank on a letter of credit. At the time bankruptcy was filed an unsatisfied call had not been made on the letter of credit which the bank had confirmed. Thus, the bank's liability remained wholly contingent.

---

**13.** Since *Davenport* was decided, § 101(11) has been redesignated as § 101(12).

**14.** The Judgment relied on two cases in which the facts differ significantly from this case. In *Public Service Co. v. New Hampshire Electric Coop. (In re Public Service Co.)*, 884 F.2d 11, 14–16 (1st Cir.1989), the First Circuit dealt with a wholly executory contract in which no performance was required or had been performed by either party. In *FDIC v. Liberty Nat'l Bank &*

The debtors signed contracts with the government which called for performance over ten-year periods, each year constituting an annual rental period. For each rental period, the government was not bound to pay unless the debtors fulfilled their obligations under the contracts and Congress, in its discretion, appropriated CRP funds to the CCC [ (Commodity Credit Corporation) ]. If the debtors failed to perform, the government could terminate the contract and seek a refund of all previous payments.... When the debtors led [sic] for bankruptcy, the CCC had no money to pay them any future rent but, at most, had money to pay them for their performance during the prior fiscal year. When the FmHA requested setoff, the CCC had no money to give it for future years.

*Buckner,* 211 B.R. at 52. No party asserts that the Tuttles' CRP contract is invalid. The only issue is whether the Tuttles' obligation to perform postpetition or the payment provisions in the contract rendered the United States' duty to pay unenforceable. No party argues that the Tuttles' CRP contract was unenforceable prepetition. The Tuttles performed and the United States paid in the years prior to the filing of the Tuttles' chapter 11 case. It follows that the United States' debt to the Tuttles for CRP payments was "valid and enforceable" on the day that they filed chapter 11 and this prepetition debt may be setoff by the United States against claims that it has against the Tuttles.

The Tuttles, and farmers in other cases, have argued that CRP payments are postpetition debts thereby precluding setoff because the yearly obligations of the United States and the farmers under CRP contracts are conditions precedent so that the contracts are not enforceable each year until performed, as opposed to mutual promises resulting in an enforceable contract on the day that the contract is signed. The Judgment touched upon this argument, but did not resolve it. Rather, the Judgment concluded that the CRP payments were not "absolutely owing" to the Tuttles on the petition date because, when the contract was signed, the Tuttles' performance thereunder was conditioned on the United States' subsequent obligation to pay the annual rental payment for each year. *Buckner,* 211 B.R. at 54. For the reasons stated above, the Judgment's restriction that to constitute a debt the obligation must be "absolutely owed" is misplaced.

The majority of the case law concludes that the United States' obligation to make CRP payments arises when CRP contracts are signed, *i.e.,* CRP contracts create mutual promises rather than conditions precedent. *See Gerth,* 991 F.2d at 1436; *Buckner,* 165 B.R. at 946–47; *United States v. Parrish (In re Parrish),* 75 B.R. 14, 15 (N.D.Tex.1987); *Matthieson,* 63 B.R. at 56; *Allen,* 135 B.R. at 865. In *Gerth,* the court summarized the law as follows:

> [C]ontracts should be construed with a preference for finding mutual promises rather than conditions. Restatement (Second) of Contracts § 227(2) and cmt. d (1982); *see Allen,* 135 B.R. at 865. A promise is an assurance from one party that performance will be rendered in the future, given in a manner that the other party could rely on it. 3A Corbin on Contracts § 633, at 32. A condition, however, makes the duty of one party dependant upon performance by the other. *Id.* It creates no rights or duties in and of itself, but only limits or modifies rights or duties. *In re Lee,* 35 B.R. 663, 665 (Bankr. N.D.Ohio 1983) (citing S. Williston, A Treatise on the Law of Contracts, § 663 (3d ed.1961)).

991 F.2d at 1434. In all of the cases finding CRP contracts to be contracts based on mutual promises, the courts have found the existence of liquidated damages provisions to be a strong indication that the parties intended to create a contract when it was signed. *See id.; Matthieson,* 63 B.R. at 56; *Allen,* 135 B.R. at 865.

Under the facts set forth in the Judgment, including the quotation of the liquidated damages provision of the Tuttles' CRP contract and the applicable law, we are convinced that the United States and the Tuttles exchanged mutual promises to perform. The Judgment was in error in holding that the United States' obligation to pay CRP pay-

ments to the Tuttles arose postpetition when the Tuttles performed their obligations under the CRP contracts each year and when Congress appropriated funds.

## IV. *Conclusion*

For the reasons set forth above, the Judgment is hereby reversed.

MATHESON, Bankruptcy Judge, Concurring.

I concur with the reasoning and result reached by the majority in the Tuttle matter. In the Buckner matter I concur in the result, but would do so for other reasons.

The Buckner case is before the Court in an odd procedural posture, and one that is not fully explained either by the record or the parties. In Buckner the district court entered its order reversing the order of the bankruptcy court that denied the United States' motion for relief from stay. The mandate from the district court required the bankruptcy court to convene a hearing on the motion for relief from stay and to determine whether relief should be granted to permit the United States to effect its right of offset.

By the time the matter had been remanded to the bankruptcy court and the hearing was set, the reality was that Buckner had, by then, completed his plan and the right of the United States to set off any of the CRP payments that funded the plan had become moot. This was the explicit finding by the bankruptcy court in its Judgment. *In re Buckner*, 211 B.R. 46, 51 (Bankr.D.Kan. 1997). Thus, the parties were not back before the bankruptcy court contesting the issues framed by the motion of the United States for relief from stay. Instead, the parties were then contesting the right of the United States to set off the CRP payment Buckner became entitled to receive late in 1996, after his plan was completed. *Id.*

The bankruptcy court held that the United States was bound by the terms of the debtor's Chapter 13 plan, and had retained no right of set off that it could effect after the plan payments were completed. The majority addresses the question of whether set off rights can be modified by a confirmed chapter 13 plan, but does so in the context of deciding whether the District Court Order was "clearly erroneous." I do not believe the "clearly erroneous" analysis is apt.

Bankruptcy proceedings are not static; they are fluid and continuing. The bankruptcy court's order denying the motion of the United States for relief from stay was on appeal at the time the court entered its order confirming Buckner's chapter 13 plan. I agree with the bankruptcy court in its holding that the plan became final and binding on the parties and governed the future course of the chapter 13 case. The mandate of the district court does not supersede the order of confirmation. Where I would part company with the bankruptcy court is in its conclusion that the plan cut off the right of the United States to exercise its right of set off post-consummation of the plan.

As the majority recognizes, this issue is not without controversy. Nevertheless, and without further lengthening this concurrence, I would follow the holding of the Ninth Circuit in the *Carolco* case, where it concluded that section 553 of the Code takes precedence over an order of confirmation. *Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group)*, 963 F.2d 1269 (9th Cir.), *cert. denied*, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992). Based on that precedent I would reverse the order of the bankruptcy court and remand for the entry of an appropriate order allowing the United States to exercise its right of set off as to any CRP payments that became payable to Buckner after consummation of his plan.